UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DARCEL D. FISHER HARRIS,

        Plaintiff,

vs.   Case No.  3:12-cv-488-J-MCR

HARVEY SCHONBRUN, Trustee,

        Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

This action for damages under the Truth In Lending Act came before the undersigned for a bench trial on July 17, 2013.  After reviewing the parties' proposed findings of fact and conclusions of law, and the record as a whole, the Court is now prepared to decide the case.

**I.   INTRODUCTION**

Plaintiff Darcel D. Fisher Harris brought this action under the Truth in Lending Act, 15 U.S.C. § 1601, et. seq. ("TILA") and the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. §§ 1602, 1639 ("HOEPA"), to enforce her election to rescind a loan transaction made with Defendant Harvey Schonbrun, to void Defendant's interest in the real property securing the loan, and to recover statutory damages and attorneys' fees and costs resulting from Defendant's alleged TILA violations.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 33).

**II.  FACTUAL BACKGROUND**

On October 16, 2013, Plaintiff entered into the consumer credit transaction at issue (the "Transaction").  At that time, Plaintiff executed a promissory note in the principal amount of $15,500.00, payable to Defendant (the "Note).[2]  The Note was secured by a mortgage on Plaintiff's real property located at 1145 Palmetto Street, Jacksonville, Florida 32206 (the "Palmetto Street Property").

Plaintiff testified that the purpose of the subject loan was to make home improvements.  (Tr. 18).  However, she encountered difficulties in obtaining the funds necessary to complete the home improvements due to certain procedures put in place by Defendant for acquiring the funds.  (Tr. 56-58).  As a result, Plaintiff testified she became frustrated with the loan and it fell into arrears.  (Tr. 89-90).  After receiving a demand letter from Defendant, advising her of the acceleration of the Note, Plaintiff sought assistance from the Florida Hardest Hit program but was unable to refinance because the debt was not reflected on her credit report.  (Tr. 54-55).  Thereafter, Plaintiff began receiving foreclosure notices and sought assistance of counsel, who assisted with providing Defendant with a notice of rescission and instituted this action. (Tr. 55).

As grounds for rescission, Plaintiff asserts that Defendant failed to provide proper notice of her right of rescission at the time of making the loan.  Specifically, Plaintiff alleges that she signed the release of right of rescission on the same day as the notice

---

[2]  The loan was made from an investment trust in which Defendant acts as the trustee. (Tr. 129).  Defendant was not personally present at the loan closing at issue but had delegated the task of closing to a title company/agent.  (Tr. 114).

of right of rescission form, rather than after the three-day period; and that she did not receive the requisite two copies of the right of rescission form.

In response, Defendant contends that the subject loan is not covered by TILA, because the Palmetto Street Property securing the Note was not Plaintiff's "principal dwelling" at the time of the loan. In addition, Defendant argues that Plaintiff received "clear and conspicuous" notice of her right to rescind regardless of whether any TILA violations actually occurred.

## III.   LEGAL ANALYSIS

### A.   The Truth In Lending Act

Any creditor, as defined by 15 U.S.C. § 1601(f), that fails to comply with any requirement imposed under TILA, including, but not limited to 15 U.S.C. § 1635(a), is liable for actual damages, statutory damages, and attorneys' fees and costs. 15 U.S.C. § 1640(a).

TILA affords any consumer the right to rescind a credit transaction that results in the creditor taking a security interest in property in which the consumer has an ownership interest and is the consumer's principal dwelling. 15 U.S.C. § 1635(a). An owner of the secured property who is not an obligor pursuant to the note or contract is still entitled to rescind the transaction, and must be provided with notice of the right to rescind and provided an opportunity to rescind the transaction. 12 C.F.R. §§ 226.15(a). 12 C.F.R. § 226.23(a)(3) provides a consumer with an absolute right to rescind the credit transaction for three (3) business days following the closing of the transaction. Additionally, a consumer is able to rescind a qualified transaction up to three (3) years

from the date of the transaction in the event the creditor fails to provide the consumer with all material disclosures, including the disclosure of the consumer's right to rescind the transaction. 12 C.F.R. § 226.23(a); see Rodash v. AIB Mortg. Co., 16 F. 3d 1142, 1145 (11th Cir. Fla. 1994), abrogated on other grounds by Veale v. Citibank, F.S.B., 85 F.3d 577 (11th Cir. 1996); Kitchen v. Ameriquest Mortg. Co., 2005 U.S. Dist. LEXIS 43937 (N.D. Ga. Apr. 29, 2005).

     Each person with the right to rescind a transaction must be provided with two (2) copies each of the notice of the right to rescind the transaction. 12 C.F.R. § 226.23(b). The notice of the right to rescind must be on a separate document that "clearly and conspicuously" discloses the following: (i) that the creditor will acquire a security interest in the consumer's principal dwelling; (ii) that the consumer has a right to rescind the transaction; (iii) how the consumer may exercise his or her right to rescind the transaction, and provide a form the consumer may use to rescind the transaction that designates the creditor's business address; (iv) the effects of rescission as outlined in 12 C.F.R. § 226.23(d); and the date the rescission period expires. Id. A creditor's failure to deliver two (2) copies of the notice of right of rescission to each person with a right to rescind the transaction at the loan closing gives rise to an extended right of rescission of three (3) years from the date of the transaction. See Smith v. Highland Bank, 108 F. 3d 1325, 1326 (11th Cir. Ala. 1997); Rodash, 16 F. 3d 1142 at 1145-46; Cooper v. First Gov't Mortg & Investors Corp., 238 F. Supp. 2d 50, 63 (D.D.C. 2002); Hanlin v. Ohio Builders & Remodelers, 212 F. Supp. 2d 752, 759-60 (S.D. Ohio 2002).

The three-day right of rescission is intended "to give the consumer the opportunity to reconsider any transaction which would have the serious consequence of encumbering the title to his [or her] home." S.Rep. No. 368, 96th Cong., 2d Sess. 28 (1980), reprinted in 1980 U.S.C.C.A.N. 236, 264.  Thus, TILA permits waiver of a consumer's three-day right to rescind the transaction only "if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency." 12 C.F.R. § 226.23(e).  In order to waive or modify a consumer's three-day right of rescission, a consumer must provide the creditor with a dated, written statement describing the emergency, specifically modifying the right to rescind, and bearing the signatures of all parties entitled to rescind the transaction.  Id.

A consumer's right of rescission may be exercised by notifying the creditor of the rescission by mail, telegram, or other means of written communication.  12 C.F.R. §§ 226.15(a)(ii)(2), 226.23(a)(2).  "Notice is considered given when mailed, or when filed for telegraphic transmission, or, if sent by other means, when delivered to the creditor's designated place of business."  Id.

"When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge." 12 C.F.R. § 226.23(d)(1).  A creditor is obligated to return to the consumer any money or property that has been given to any party in connection with the rescinded transaction and take any action necessary to reflect termination of the security interest within twenty (20) days from receipt of notice that the consumer has elected to rescind the transaction.  12 C.F.R. § 226.23(d)(2).  Regulation Z goes on to

require that "[w]hen the creditor has complied with [12 C.F.R. § 226.23(d)(2)], the consumer shall tender the money or property" received from the creditor in connection with the transaction to the creditor. 12 C.F.R. § 226.23(d)(3).

Lastly, 12 C.F.R. § 226.23(d)(4) provides a court may modify the "procedures" set forth by 12 C.F.R. § 226.23(d)(3) and (4). Thus, a court is afforded the authority to modify the creditor's and consumer's tender duties and the creditor's duty to take any action necessary to reflect the termination of the security interest, but not the voiding of the security interest or the cancellation of the consumer's liability for finance or other charges.

## A. Primary Residence Issue

In order for a loan to be subject to TILA protection, the property securing the Note must be the borrower's "principal dwelling." See 15 U.S.C. § 1635(a); 1602(w); 15 C.F.R. § 226.26 (2)(a)(19). Here, based on the evidence presented at trial, the undersigned is satisfied that the Palmetto Street Property was Plaintiff's primary residence at the time of the Transaction;[3] thus it is subject to TILA.[4]

---

[3] Plaintiff purchased the Palmetto Street property as her primary residence on February 22, 1992, and has held continuous ownership since that date. (Tr. 11-12). She has lived there with her children and all of her furnishings and personal items are located at that residence. (Tr. 43). Plaintiff testified that although she spent time at her former husband's home, she continued to maintain the Palmetto Street property as her primary residence. (Tr. 13, 103). In addition, the loan application lists this property as her present address. See (Def. Ex. 1).

[4] It has come to the Court's attention that Plaintiff is in the midst of tax collection issues regarding her homestead exemption. (Tr. 99, 77). This determination should not be used or have any effect in that regard.

### B.     Notice of the Right of Rescission Issue

It is undisputed that Plaintiff signed the Notice of Right to Cancel and Release of Rescission Period form. (Def. Ex. 4; Tr. 47-9; 86-11). However, the document itself is ambiguous as to the date Plaintiff signed the Release of Rescission Period portion of the form.

The text typed in the paragraph immediately above the Plaintiff's signature on the Release of Rescission Period portion of the form states:

> I, the undersigned, am aware that today, **OCTOBER 21, 2009**, is after the expiration date of the Right of Rescission for the refinance transaction on the above-referenced property. I hereby elect not to rescind the transaction.

(Pl. Ex. 37) (bold and underline in original). However, the date of "16 Oct. 09" is adjacent to Plaintiff's actual signature. (Id.). Thus, based on the fact that Plaintiff's signatures under both the Notice of Right to Cancel portion and the Release of Rescission Period portion list October 16, 2009 as the signature date, the Court finds that the evidence establishes that the entire document was likely signed on October 16, 2009, prior to the expiration of the rescission period.

In addition, Plaintiff alleges that she was only provided with one copy, instead of two, of the Notice of the Right to Rescission. There was no evidence to the contrary offered on this issue; thus, the Court assumes only one copy of the document was provided to Plaintiff.

In light of the Court's determination that Plaintiff likely signed the Release of Rescission Period form prior to the expiration of the rescission period and did not receive the requisite two copies of the document, the undersigned must determine

whether these TILA violations justify rescission of the Transaction and entitle Plaintiff to recover statutory damages and attorneys' fees and costs.

TILA does not require "perfect notice," but only clear and conspicuous notice of rescission rights. See Goff v. LaSalle Bank, 2010 WL 8991929, *4 (N.D. Ala., Nov. 30, 2010) ("a lender's compliance with the notice provision is not mechanical, but requires the court to scrutinize the circumstances of the transaction) (citations omitted). The notification requirements of TILA for rescission do not require a hyper-technical satisfaction, but require "clear and conspicuous notice of rescission rights." See Veale v. Citibank, F.S.B., 85 F.3d 577 (11th Cir. 1996).[5]

Here, Plaintiff does not dispute the fact that she was presented with the release of rescission form, and that she had an opportunity to read it before signing. (Tr 85-93). Plaintiff never tried to cancel or rescind within the three-day period, or at any time until December 2011, after being sued by Defendant for foreclosure in September 2011. (Pl. Ex. 40; Tr. 26, 108-110). In fact, the evidence shows that the loan proceeds were not actually disbursed to Plaintiff until after the three-day rescission period, and the first payment was not due until November 21, 2009, thirty days after disbursement. See (Def. Ex. 15, Tr. 133-35). Plaintiff clearly had the entire three-day period in which to

---

[5] For example, in Ward v. Lime Financial Services, 2009 WL 3425676 (S.D. Ala., Oct. 22, 2009), plaintiffs claimed that defendant, through its agents, left blank certain items their Notice of Right to Cancel forms, including the ending dates for the statutory three-day right of rescission. Discussing TILA rescission, the Court stated as follows: "TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescission rights." Id. (citing Veale v. Citibank, F.S.B., 85 F.3d 577, 580 (11th Cir.1996); see also Smith v. Highland Bank, 108 F.3d 1325, 1326 (11th Cir.1997). "Unlike the general civil liability section of the Truth-in-Lending Act, 15 U.S.C. §1640, which provides for liability for any non-disclosure, the rescission provisions under 15 U.S.C. § 1635 require that the non-disclosure be material." Ward at *3.

rescind, but did not attempt to do so. (Tr. 135). Instead, Plaintiff accepted and enjoyed the benefits of the loan proceeds without objection.[6] (Tr. 92-93).

Because neither party's actions were entirely appropriate, the Court is presented with a conundrum. Thus, the undersigned will look to the legislative purpose of TILA to ensure a just result.

### C.    The Purpose of the Truth in Lending Act

The true purpose of TILA is to enure a meaningful disclosure of credit terms so that consumers will be able to compare various credit terms and avoid the uninformed use of credit. Williams v. Homestake Mortgage Co., 968 F.2d 1137, 1140 (11th Cir. 1992), quoting 15 U.S.C. §1601. One of the goals of the statutory rescission process is to return the parties to the position they held prior to the transaction. Id. Congress intended for courts to eschew a "hyper-techincal reading of any part of TILA" and to avoid allowing a lender's innocent mistake from bringing a windfall to a plaintiff or her lawyers. Goff v. LaSalle Bank, 2010 WL 8991929 (N.D. Ala., Nov. 30, 2010) at *3, quoting Smith v. Highland Bank, 108 F.3d 1325. at 1327, n. 4.

Though one goal of rescission process outlined by TILA is to place the consumer in a much stronger bargaining position, another goal of statute is to return the parties most nearly to the position they held prior to entering into the transaction. See 15 U.S.C.A. § 1635(b); Williams v. Homestake Mortgage Co., 968 F.2d 1137 (11th Cir. 1992). Courts may impose conditions upon the voiding of a creditor's security interest in

---

[6] Specifically, Plaintiff used the money to pay the 2009 taxes on the Palmetto Street Property and made home several repairs. See (Pl. Ex. 36; Tr. 26).

a rescinded consumer credit transaction and may condition voiding of such security interest upon terms that would be equitable and just to the parties in view of all surrounding circumstances. 15 U.S.C. § 1635(b).

**IV.   THE COURT'S DECISION**

Accordingly, and in light of the totality of the circumstances surrounding this loan transaction at issue, the Court will void Defendant's security interest in Plaintiff's residence located at 1145 Palmetto Street, Jacksonville, Florida 32206.  However, as a condition of rescission, Plaintiff shall tender the full amount of benefit which she has received from Defendant within **ninety (90) days** from the date Judgment is entered.[7]  Each party shall bear their own attorney's fees and costs.[8]  The Clerk shall enter a Judgment consistent with these findings.

**DONE AND ORDERED** in Jacksonville, Florida this  13th  day of September, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

---

[7] Plaintiff received the benefit of $10,932.60 and estimates a total amount paid of $3,027.57. See (Doc. 41, p. 4; Pl. Exs. 5, 36). Defendant testified to a loss of approximately $7,000.00 as a result of the Plaintiff's default. The Court will utilize the lower of the estimations and Judgment shall be entered in favor of Defendant in the amount of $7,000.00.

[8] That being said, the Court has reviewed Plaintiff's counsel's submitted billing ledgers and finds it unreasonable that they are seeking an amount of $36,024.66 in attorney's fees and costs in a case dealing with such a minor sum of money in comparison. In any event, as fees are not awarded to either party here, the Court will not address the matter further.